**Jennifer J. Middleton, OSB No. 071510**
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell, OSB No. 123964**
cmitchell@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| **KIRSTEN CARDWELL** | Case No.:  6:24-cv-00635 |
| **Plaintiff,** | |
| v. | **COMPLAINT** |
| **City of Eugene, by and through the Eugene Police Department; Chris Skinner in his Individual Capacity** | **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; U.S. Constitution 14th Amendment** |
| **Defendants.** | **Demand for Jury Trial** |

## INTRODUCTORY STATEMENT

### 1.

Defendants Eugene Police Department (EPD) and Chief of Police Chris Skinner discriminated against former Eugene Police Officer Kirsten Cardwell based on sex by subjecting her to sexual harassment and a gender-based hostile work environment for years, and by denying her opportunities for advancement and promotion based on sex. This is an action arising under the Equal Protection Clause of the United States Constitution and Title VII.

**PARTIES**

**2.**

Kirsten Cardwell is a resident of Lane County, Oregon, and a former employee of the City of Eugene Police Department. She is female.

**3.**

Defendant City of Eugene is a political subdivision of the State of Oregon located in Lane County, Oregon. It maintains a municipal police department (Defendant City of Eugene Police Department, or EPD).

**4.**

Defendant Chris Skinner was the Chief of Police for EPD at all times relevant to the complaint and, at all times material, acted under color of state law. Skinner was the final policy maker for EPD during the time period at issue with respect to the personnel management decisions relevant herein.

**5.**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**6.**

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims occurred in Lane County, Oregon.

**FACTS**

**7.**

Plaintiff Kirsten Cardwell was hired by the Eugene Police Department as a patrol officer in April of 2019. She completed her training and was released as a solo officer in approximately March of 2020.

**8.**

Male officers began subjecting Officer Cardwell to unwanted sexual attention almost immediately after she joined EPD. A male officer who had been friendly and encouraging during Officer Cardwell's first few weeks at work approached her and, completely unprompted, said: "My wife and I have not had sex in five years. Men have needs," with a tone of voice and expression on his face that made clear he was propositioning her. Male officers routinely referred to Officer Cardwell as "baby girl" on the work computer messaging system.

**9.**

In January 2021, Sergeant Carlos Jones was assigned as Officer Cardwell's supervising sergeant. Co-workers told Officer Cardwell to be careful of Sgt. Jones and that women had made sexual harassment allegations against him in the past. Upon information and belief, Sgt. Jones left the Cottage Grove Police Department (where he had worked prior to joining EPD) because of allegations of sexual misconduct against him. Knowing this, Chief Skinner nevertheless promoted Jones to Sergeant, placing him in a supervisory position over female officers.

**10.**

Immediately after becoming her supervisor, Sgt. Jones began to treat Officer Cardwell differently from her male peers. He closely monitored everything that Officer Cardwell did, taking every opportunity to control her actions and to get physically close to her. He rejected her reports and, with each rejection, required her to meet with him in his office for an extensive in-person feedback session. After team briefings he would dismiss everyone else, but order Officer Cardwell to stay behind. He told Officer Cardwell that she needed to sit with him in his office and review her voicemails and emails with him, so that he could make sure she was adequately

responding to her messages. His treatment was condescending, humiliating, and invasive. He did not monitor and control his male subordinates in this manner.

**11**.

Sgt. Jones also made comments about Officer Cardwell's body and engaged in unwanted physical contact. After ordering her a new pair of duty pants, he made her stand up in front of everyone during a briefing and model them. When she accidentally pocket-dialed his phone number he said, "Why is your butt thinking of me." On one occasion when she was sitting in her car with the window down, Sgt. Jones reached through the open window and, without explanation, pushed the back of her seat forward so that she was pressed against the steering wheel. He did not engage in these behaviors with male officers.

**12.**

Three weeks into her assignment working under Sgt. Jones' supervision, Officer Cardwell went to Sgt. Kyle Evans, the scheduling sergeant, and begged him to take her off Sgt. Jones' schedule. She said, "please help me," and, "you need to get me away from him." Sgt. Evans did not switch Officer Cardwell's shift, and she was left working under Sgt. Jones for four more months.

**13.**

Sgt. Jones' invasive and controlling behaviors escalated over time. He routinely called Officer Cardwell off whatever task she was doing (either through the computer messaging system or publicly, over the radio) and made her report to his office four or five times during a single shift. Months passed. Officer Cardwell used up all her vacation and sick time to try and get away from Sgt. Jones.

**14.**

After she began trying to avoid him, Sgt. Jones retaliated. He would tease her in a hostile way, mocking her and accusing her of thinking she was "above the law." In April 2020 Officer Cardwell pulled over a car that did not have its lights on and conducted a traffic stop. After she left the scene Sgt. Jones immediately appeared, stopped the same car, and called Officer Cardwell back. He ordered Officer Cardwell to turn off her body camera, which was against EPD policy. He then insisted that the driver was intoxicated and that Officer Cardwell had overlooked this, which was not the case. While it was eventually confirmed that the driver was not intoxicated and that Officer Cardwell had done nothing wrong, she became afraid that Sgt. Jones was trying to entrap her. Officer Cardwell became even more afraid of Sgt. Jones and desperate to get away from him.

**15.**

Officer Cardwell wrote to her union representatives and asked for help. Chief Skinner eventually transferred her to another shift but still required her to work in close proximity to Sgt. Jones, whom she saw regularly around the department. Eventually Sgt. Jones was placed on leave.

**16.**

Upon information and belief, EPD conducted an internal affairs investigation and substantiated findings against Sgt. Jones, based on reports by Officer Cardwell and numerous other people.

**17.**

Defendants EPD and Chief Skinner kept Sgt. Jones on paid leave for at least a year. During that time he was still in close contact with Officer Cardwell's coworkers. He spread

rumors that he was going to sue Officer Cardwell and that she was a liar, which interfered with her professional relationships and created a hostile environment at work.

**18.**

After Sgt. Jones was put on leave, posters of Officer Cardwell appeared in public spaces all over Eugene and Springfield. The posters, which were entitled 'Dirty Cop!! Officer Kirsten Cardwell," showed a photograph of Officer Cardwell in uniform surrounded by demeaning slogans, including that she "breaks policy, procedure, protocol, AND the very laws we the taxpaying citizens pay her to enforce"; that she "sexually harasses citizens"; that she "murders animals for fun"; and that "her entire existence is a needless catalyst for many people's stress, sorrow, turmoil and strife." Sgt. Jones had used similar language with Officer Cardwell – in particular, telling her that she "murders animals for fun" and suggesting that Officer Cardwell thought she was above the law – in conversation.

**19.**

Officer Cardwell reported the posters to EPD. Upon information and belief, Chief Skinner was aware of the report.

**20.**

Upon information and belief, EPD and Chief Skinner took no corrective action and continued to maintain Sgt. Jones on paid leave.

**21**.

Other male officers continued to sexually harass Officer Cardwell after Sgt. Jones was placed on leave.

**22.**

Sergeant Judd Warden was one of the most frequent offenders. Conduct included but was not limited to the following:

(a) Warden routinely talked to Officer Cardwell about the size of his genitals.

(b) He took a poll around the office of whether Officer Cardwell should wear leggings to work or whether it made her look fat.

(c) He commented on female coworkers' bodies in Officer Cardwell's presence, saying things like, "She has great breasts but her face looks like a horse."

(d) In the spring of 2023 Warden showed a video to Officer Cardwell's sergeant and her entire team about "ball handles," and suggested that because Officer Cardwell's hands are big she would be good at handling men's testicles.

Warden engaged in these and other unwanted sexual behaviors throughout Officer Cardwell's employment at EPD.

**23.**

Warden's behavior was open and known to management, including Chief Skinner, but for years EPD and Chief Skinner took no action to address it.

**24.**

Although Officer Cardwell struggled with sexual harassment she also loved her job and excelled at it. She was officer of the year in 2021. She received a medal of valor, the highest honor given at EPD, in 2022. She consistently got high marks on her performance reviews.

**25**.

Male officers who excelled and were recognized in the manner that Officer Cardwell was were generally promoted onto one of the tactical teams – the SWAT team or the K9 team. These

teams involved additional, higher-level training, overtime pay, a potential pay increase, and other benefits. They entailed status and prestige.

**26.**

Upon information and belief, there has never been a female officer on either tactical team at EPD. The SWAT team has a special locker room that is for men only. In the spring of 2023, a male co-worker who was on the SWAT team told Officer Cardwell: "We can't have women on SWAT, then we couldn't talk dirty and pee in bottles, it would change the culture."

**27.**

In May of 2022 Officer Cardwell had become so frustrated with the harassment at EPD and barriers to advancement that she applied for a job at the Springfield Police Department. When she let Chief Skinner know that she had a pending application, he encouraged her to stay at EPD and told her that she was next in line for a K9 officer position. Officer Cardwell withdrew her application from Springfield based on this representation.

**28.**

The K9 officer position did not open until approximately April of 2023. The application process involved a physical test and an interview, followed by a review of the applicant's internal file at EPD ("performance review"). The posting for the K9 officer position indicated that only one applicant would be chosen to proceed to the performance review stage.

**29.**

Officer Cardwell performed very well on both the physical test and the interview. A few days later the K9 team sergeant called and told her, "Congratulations, you're moving to the performance review. On Saturday we will sit down and talk about the dog."

**30.**

No one called Officer Cardwell on Saturday. A few days later she learned that Chief Skinner had given the position to a less qualified male co-worker.

**31.**

In May, after Chief Skinner denied her the K9 officer position, Officer Cardwell's work environment changed significantly. Both co-workers and managers ignored her. People would not make eye contact with her. She sat in the records department and took reports. Co-workers spread rumors about her. Male co-workers told her that she had not gotten the spot on the K9 team because she is female.

**32.**

In approximately June 2023 EPD began an investigation based on allegations that Judd Warden was sexually harassing female co-workers. Officer Cardwell participated in the investigation.

**33.**

EPD sent Warden an email in which it unlawfully disclosed the identities of two of the complainants, making them vulnerable to retaliation by Warden and co-workers. Chief Skinner also allowed Warden to return to work without any restrictions or safety plan.

**34.**

Officer Cardwell was ostracized and fearful of continued retaliation. Seeing that EPD and Chief Skinner did not take appropriate corrective action against the sexual harassment and that she would be unable to advance in the Department because she is female, she had no choice but to resign. Her last day at EPD was approximately July 14, 2023.

**35.**

The gender discrimination that Officer Cardwell suffered at EPD is part of a wide-spread culture in which women are treated differently, denied opportunities, and pushed out. The discrimination has been open and known to Chief Skinner and other upper-level management for years. An assessment of EPD's culture, conducted by the Police Executive Research Forum in 2017, put EPD on notice that it had a problem with workplace sexual harassment and recommended that EPD provide effective anti-harassment training (including for managers and supervisors), conduct fair and prompt investigations of any reports, and take other, related measures. Yet EPD and Skinner failed to prevent sex-based discrimination in the workplace or take appropriate corrective measures to protect its female employees.

**36.**

Kirsten Cardwell filed a Complaint with the EEOC on March 15, 2024. The EEOC issued Officer Cardwell a 90-day Right to Sue Notice on March 18, 2024.

**FIRST CLAIM FOR RELIEF**
**U.S. CONSTITUTION, 14TH AMENDMENT**
**42 U.S.C. § 1983**
**Discrimination Because of Sex**
**(AGAINST THE CITY OF EUGENE, BY AND THROUGH THE EUGENE POLICE DEPARTMENT;**
**CHRIS SKINNER IN HIS INDIVIDUAL CAPACITY)**

Plaintiff repeats and realleges paragraphs 1 through 36 as though fully restated herein.

**37.**

By the acts and omissions described above, Defendants discriminated against Plaintiff based on sex in violation of her right to equal protection of the laws enshrined in the 14th Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983. The sex-based discrimination included, but was not limited to: sexual harassment; hostile work

environment based on sex; denial of opportunities for advancement and promotion based on sex; constructive discharge.

**38.**

Defendant Chief of Police Skinner personally participated in depriving Plaintiff of her constitutional rights; acquiesced to his subordinates' deprivation of Plaintiff's rights; and/or set in motion violative conduct that he knew or should have known would result in the violation of Plaintiff's constitutional rights.

**39.**

Defendant Chief of Police Skinner had final policymaking authority from the City of Eugene with respect to personnel matters. He acted as final policymaker when he caused the deprivation of Plaintiff's rights.

**40.**

Defendants' discrimination occurred pursuant to the City of Eugene's longstanding practices or customs in its police department of failing to promote female employees on the basis of sex and tolerating sexual and gender-based harassment against women in the workplace. This practice or custom included, but was not limited to, knowingly allowing sexual harassment in the workplace; knowingly allowing male supervisors to single out female subordinates for oppressive and demeaning treatment; and inadequately supervising and training both supervisors and employees, thereby failing to adequately discourage further constitutional violations.

**41.**

Defendants' sex-based discrimination against Plaintiff was intentional or undertaken with deliberate indifference to Plaintiff's constitutional rights. Defendants had no exceedingly persuasive justification for their discrimination.

Page 11 - **COMPLAINT**

**42.**

Plaintiff lost valuable wages, benefits, and professional opportunities because of Defendants' discrimination. She also suffered fear, humiliation, isolation, reputational harm, and other emotional distress because of Defendants' knowing disregard of and refusal to remedy its discrimination.

**43.**

Plaintiff is entitled to full backpay, compensatory damages in an amount to be determined by the jury, and a promotion to K9 Officer and accompanying raise in salary.

**44.**

Defendants' discrimination was intentional or taken in reckless disregard for Plaintiff's rights, and punitive damages should be awarded to punish and deter similar conduct in the future.

**45.**

Plaintiff is also entitled to reasonable attorney fees and costs.


**SECOND CLAIM FOR RELIEF**
**TITLE VII – 42 U.S.C. § 2000E ET SEQ**
**DISCRIMINATION BECAUSE OF SEX**
**AGAINST THE EUGENE POLICE DEPARTMENT; THE CITY OF EUGENE**

Plaintiff repeats and realleges paragraphs 1 through 45 as though fully restated herein.

**46.**

Defendants subjected Plaintiff to different terms and conditions of employment and denied her opportunities for advancement and promotion because of her sex, in violation of 42 U.S.C. §2000e-2. The sex-based discrimination included, but was not limited to: sexual harassment; hostile work environment based on sex; denial of opportunities for advancement and

promotion based on sex; constructive discharge. Defendants failed and refused to rectify this sex discrimination when made aware of it.

**47.**

Plaintiff lost valuable wages, benefits, and professional opportunities because of Defendants' discrimination. She also suffered fear, humiliation, isolation, reputational harm, and other emotional distress because of Defendants' knowing disregard of and refusal to remedy its discrimination.

**48.**

Plaintiff is entitled to full backpay, compensatory damages in an amount to be determined by the jury, and a promotion and accompanying raise in salary.

**49.**

Defendants' discrimination was intentional or taken in reckless disregard for Plaintiff's rights, and punitive damages should be awarded to punish and deter similar conduct in the future.

**50.**

Plaintiff is also entitled to her reasonable attorney fees and costs.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and award the following relief:

(a)     Reinstatement with a promotion to the K9 Officer position and accompanying raise in salary;

(b)     Injunctive relief requiring Defendants to redress their violations of federal law, including (1) adopting and enforcing, with the assistance of outside experts, a comprehensive policy and training program regarding non-discrimination on the basis of sex; (2) effectively

enforcing anti-harassment and retaliation policies; and (3) creating procedures for the protection of reporting parties;

(c)     An award of damages against Defendants in an amount to be established at trial, including, without limitation, damages for lost past wages and benefits; and damages for past, present, and future emotional pain and suffering, past and ongoing mental anguish, and loss of past, present, and future enjoyment of life;

(d)     An award of punitive damages in an amount sufficient to deter future violations;

(e)     An award of pre- and post-judgment interest;

(f)     An award of costs and attorney fees, and

(g)     Such other relief as is just and equitable.


Respectfully submitted this 12th day of April, 2024.

JOHNSON JOHNSON LUCAS & MIDDLETON PC

_____/s/ Caitlin V. Mitchell_____
**Caitlin V. Mitchell, OSB No. 123964**
cmitchell@justicelawyers.com
**Jennifer J. Middleton, OSB No. 071510**
jmiddleton@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
Attorneys for Plaintiff